UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY WILCZAK, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 421 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Mary Wilczak filed a claim for Supplemental Security Income ("SSI") benefits with the Social Security Administration, alleging that she had become disabled on August 5, 2006. The Commissioner denied the claim and then denied Wilczak's request for reconsideration. Wilczak sought and received a hearing before an administrative law judge ("ALJ") pursuant to 20 C.F.R. § 404.914. The ALJ denied the claim, and the Social Security Appeals Council denied Wilczak's request for review, making the ALJ's decision the final decision of the Commissioner. *See Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005). Wilczak timely filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision. Doc. 1. Before the court are the parties' cross-motions for summary judgment. Docs. 21, 22. For the following reasons, Wilczak's motion is granted, the Commissioner's motion is denied, and the case is remanded to the Commissioner for further proceedings.

**Background**

The following facts are taken from the administrative record.

### A. Factual Background

Wilczak was born in April 1952, has a GED, and speaks English. Doc. 18-3 at 37; Doc. 18-7 at 2, 6. Her last full-time job was from 1997 to 2001 as a guest services representative at a casino, where she took care of guests, handled promotional events, and entered data. Doc. 18-3 at 39-40. Wilczak also has worked as a cashier, a day care worker, a receptionist, a secretary, and a waitress. Doc. 18-7 at 17.

On August 16, 2006, two people attacked Wilczak at a bar. She suffered a broken nose, a fractured foot, three fractured ribs, and bruising and swelling of the head. Doc. 18-8 at 29-34, 40-42. Wilczak asserts that, as a result of the incident, she suffers from constant pain radiating from her lower back, carpal tunnel syndrome, disequilibrium, arthritis, and osteoporosis. Doc. 18-3 at 44-45, 53-57.

Some medical evidence supports Wilczak. After undergoing electromyography and nerve conduction studies, Wilczak was diagnosed with neuropathy—damage to nerves that can result in motor problems or pain and numbness, *see* Sensorimotor Polyneuropathy, Medline Plus, http://www.nlm.nih.gov/medlineplus/ency/article/000750.htm (last visited June 25, 2013)—and carpal tunnel syndrome. Doc. 18-8 at 106-110; Doc. 18-9 at 3-4. Wilczak also was diagnosed with disequilibrium after taking a motor control test, Doc. 18-8 at 129-130; Doc. 18-9 at 21-22, osteoporosis after undergoing a bone density study, Doc. 18-9 at 105, and an arthritic left shoulder, Doc. 18-8 at 57.

In February 2008, Wilczak saw Dr. Andrea DeLeo, D.O., M.S.E., for a neurology consultative exam. *Id*. at 104. Dr. DeLeo found that Wilczak exhibited balance and coordination deficits, gait impairment, and excessive daytime sleepiness. *Ibid*. In August 2009,

Dr. DeLeo completed a Residual Functional Capacity ("RFC") questionnaire for Wilczak. Doc. 18-9 at 53-55. Dr. DeLeo estimated that Wilczak was capable only of sitting for fifteen minutes at a time or standing for ten minutes at a time, and that Wilczak could only sit for two hours and stand for two hours out of an eight-hour workday. *Id*. at 54. The questionnaire also indicated that Wilczak required a job "which permits shifting positions at will from sitting, standing or walking," that she would need to "constantly" take unscheduled breaks during an eight-hour workday, and that she was likely to be absent from work more than four times a month due to her impairments. *Id*. at 54-55.

Other medical evidence tends to undermine Wilczak's description of her physical limitations. MRIs of her spine revealed mild-to-moderate cervical spondylosis and mild-to-moderate facet arthropathy in the lumbar spine with no evidence of nerve root compression or disc herniation. Doc. 18-8 at 22; Doc. 18-9 at 41-44. Dr. B. Sheikh, a consulting state agency physician, examined Wilczak and found that she had full muscle strength, normal sensory function, and a normal gait. Dr. Sheikh also found that Wilczak had good fine-finger manipulative abilities, appeared not to be in pain, appeared comfortable in the seated and supine positions, and was able to get on and off the examination table without difficulty. Doc. 18-8 at 78-82.

Wilczak also asserts that she has suffered from psychological problems since the August 2006 attack. In December 2007, Dr. Irena Walters, a licensed clinical psychologist, performed a psychological examination on Wilczak. *Id*. at 60-63. Wilczak told Dr. Walters that, since the August 2006 attack, she gets tearful and feels helpless, has difficulty sleeping due to pain, and suffers from fatigue, loss of energy, and loss of interest. *Id*. at 62. Wilczak also mentioned that

three ex-husbands had physically abused her. *Id*. at 60.  As for her ability to function, Wilczak told Dr. Walters that she talks to a friend once per month, gets along with her neighbors and people generally, goes grocery shopping with her son once per month, attends bi-weekly religious activities, cleans her house, and does laundry. *Id*. at 61.

Dr. Walters observed that Wilczak's concentration was fair but that her perseverance was poor. *Ibid*. Dr. Walters concluded that Wilczak was depressed with appropriate affect and gave her a Global Assessment of Functioning ("GAF") score of 60, *id*. at 62-63, which is on the border between mild and moderate psychological symptoms, *see Sims v. Barnhart*, 309 F.3d 424, 427 n.5 (7th Cir. 2002). Dr. Joelle J. Larsen, a consulting Disability Determination Services ("DDS") psychologist, reviewed Dr. Walters's examination notes and concluded that Wilczak had a mood disorder resulting in mild limitations in concentration and persistence, but no limitations in daily living activities or social functioning. Doc. 18-8 at 64-76. Dr. Richard Hamersma, another DDS consulting psychologist, reviewed Dr. Larsen's report and concurred with her conclusions. *Id*. at 94-95.

On December 30, 2009, Wilczak underwent a mental health assessment by Dr. Robert Galligan, a psychologist. Wilczak told Dr. Galligan about the August 2006 attack and complained of chronic anxiety and depression. Doc. 18-9 at 97. Wilczak also mentioned that she had been the victim of domestic violence in prior marriages and that her parents had emotionally and physically abused her. *Ibid*. Dr. Galligan found Wilczak to have a dysphoric mood and blunted affect, but no impairment of memory, judgment, concentration, attention, or thought processes. *Id*. at 98. Dr. Galligan diagnosed Wilczak with post-traumatic stress disorder and assigned her a GAF score of 53, *id*. at 98-99, meaning that she had "moderate difficulty in

social, occupational, or school functioning," *Sims*, 309 F.3d at 447 n.5 (internal quotation marks omitted).

Starting in January 2010, Wilczak has received psychiatric treatment once or twice per month from Dr. Anna Costalis. Doc. 18-9 at 127. On September 27, 2010, Dr. Costalis completed a mental capacity assessment and diagnosed Wilczak with depression, post-traumatic stress disorder, and panic disorder. *Id*. at 122-124. Dr. Costalis found that Wilczak had marked limitations in her ability to remember work-like procedures, to work in proximity to others, to complete a normal workday or workweek, to work at a consistent pace, to respond appropriately to changes in the work setting, and to travel to unfamiliar places and use public transportation; Dr. Costalis also found that Wilczak had an extreme limitation in her ability to understand and remember detailed instructions. *Ibid*. Dr. Costalis concluded that Wilczak's psychological problems would frequently prevent her from performing simple work-related tasks, that she would need to take extra breaks during the work day, and that she would need to miss work more than four times per month. *Id*. at 127-128.

## B. The Administrative Hearing

At the administrative hearing before the ALJ, Wilczak testified that she relies on her son to help her with most daily activities, including cooking, laundry, cleaning, and grocery shopping. Doc. 18-3 at 47-48. Her son drives her wherever she needs to go, though Wilczak occasionally drives herself short distances if no one else is available. *Id*. at 48. Wilczak claimed she is able to lift only a pound or two, though with pain, that she can walk only a block, that she can only sit or stand for 45 minutes before she needs to move, and that she is unable to bend over to pick things up. *Id*. at 48-50. She described her pain as a throbbing shooting pain that radiates

from her lower back to her toes and that also starts in her neck and shoots to her hands. *Id*. at 55-56. Wilczak stated that even with daily pain medication, her pain ranks as 7 or 8 out of 10 and is bad enough to disrupt her sleep. *Id*. at 52-54. Wilczak also claimed to suffer from arthritis in her left shoulder, osteoporosis, carpal tunnel syndrome, and post-traumatic stress disorder. *Id*. at 55, 57. And she noted that she has a history of high blood pressure, high cholesterol, and high triglycerides, but acknowledged that all three maladies were well compensated by mediation. *Id*. at 57. Wilczak testified that she cannot function at a job because she cannot sit, stand, or concentrate and would often be absent. *Id*. at 57-58.

A vocational expert ("VE"), Leann Care, testified about Wilczak's health and employment prospects in the Chicago metropolitan area. VE testimony helps to determine "whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used …." 20 C.F.R. § 404.1566(e). At a hearing, a VE may "respon[d] to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

The VE stated that Wilczak's last regular employment as a guest services representative was a skilled sedentary job with light physical demands. Doc. 18-3 at 59-60. The VE was asked a series of hypothetical questions regarding employment prospects for hypothetical individuals with Wilczak's age, education, and work experience. The VE first stated that an individual who could lift or carry no more than twenty pounds occasionally and ten pounds frequently, could be on her feet, standing, walking, or sitting about six hours a day, could not work at heights or

climb ladders, could occasionally negotiate stairs, and could only occasionally bend, squat, kneel, or crouch, would be capable of performing Wilczak's past work. *Id*. at 60-61. The ALJ then adjusted the hypothetical, asking what work opportunities would be available to an individual who could only sit for fifteen minutes at a time or stand for ten minutes at a time, and could sit or stand only for a total of four hours during an eight-hour workday. The VE responded that such an individual would be unable to engage in any full-time competitive employment. *Id*. at 61; Doc. 18-9 at 54. The ALJ further asked what work an individual might find if she were limited to full-time work that required her to lift and carry no more than two pounds, walk no more than one block at a time, and stand no more than 45 minutes at a time or sit no more than 35 minutes a time. The VE responded that such an individual "would need to do sedentary work with the sit/stand option, but lifting only two pounds would [make it] questionable if she could even do [the] full range of sedentary." Doc. 18-3 at 62. And in response to a hypothetical question by Wilczak's attorney, the VE said that all potential competitive work opportunities would be eliminated if Wilczak had to be absent from work more than four times per month. *Id*. at 62-63.

    **C.**    **The Commissioner's Decision**

The ALJ issued a decision finding that Wilczak was not disabled and therefore that she was ineligible for SSI benefits. The ALJ followed the "five-step sequential evaluation process" for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). The five steps are as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of

> impairments [in 20 C.F.R. Part 404, Subpart P, App. 1] that are considered
> conclusively disabling. If the impairment meets or equals one of the listed
> impairments, then the applicant is considered disabled; if the impairment
> does not meet or equal a listed impairment, then the evaluation continues.
> The fourth step assesses an applicant's residual functional capacity (RFC)
> and ability to engage in past relevant work. If an applicant can engage in
> past relevant work, he is not disabled. The fifth step assesses the
> applicant's RFC, as well as his age, education, and work experience to
> determine whether the applicant can engage in other work. If the applicant
> can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (internal quotation marks omitted); *see also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). RFC "is defined as 'the most [the claimant] can still do despite [her] limitations.'" *Weatherbee*, 649 F.3d at 569 n.2 (first alteration in original) (quoting 20 C.F.R. §§ 404.1545(a), 416.945(a)). "A finding of disability requires an affirmative answer at either step three or step five. The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At the fifth step, the government "must present evidence establishing that the claimant possesses the [RFC] to perform work that exists in a significant quantity in the national economy." *Weatherbee*, 649 F.3d at 569 (footnote omitted).

Here, the ALJ determined at step one that Wilczak had not engaged in "substantial gainful activity" since August 2006, when she submitted her SSI application. Doc. 18-3 at 19. At step two, the ALJ determined that Wilczak suffered from these severe impairments: (1) disorders of the back and left shoulder; (2) bilateral carpel tunnel syndrome; (3) osteoporosis; and (4) disequilibrium. *Id*. at 19-25. The ALJ further found that Wilczak suffered from these non-severe impairments: (1) physical injuries from the August 2006 attack; (2) fractured ribs from a November 2009 fall; (3) right knee problems; (4) hypertension and high blood pressure;

and (5) post-traumatic stress disorder and depression. *Id*. at 25-27; *see* 20 C.F.R. 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). At step three, the ALJ found that none of Wilczak's impairments were listed or equal to a listing in 20 C.F.R. Part 404, Subpart P, App. 1, and thus that Wilczak was not categorically disabled. *Id*. at 27. Wilczak does not challenge the ALJ's findings at any of these three steps.

As part of step four, the ALJ determined that Wilczak had the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b)—meaning the ability to occasionally lift up to 20 pounds, frequently lift up to 10 pounds, to do a good deal of walking or standing, and to sit for extended periods while using arm and leg controls—except that she could not work at heights or climb ladders, could only occasionally climb stairs, bend, squat, kneel, or crouch. *Id*. at 27-30. Given this RFC, the ALJ determined Wilczak could perform her last relevant work as she actually performed it and as it is generally performed. *Id*. at 30. Having made this determination, the ALJ concluded that Wilczak was not disabled under the Social Security Act and declared her ineligible for SSI benefits. *Ibid*.

**Discussion**

A claimant is disabled under the Social Security Act if she is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant will prevail if her impairments prevent her from performing her prior employment and any other job generally available in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). As noted above,

because the Social Security Appeals Council declined to review the ALJ's decision that Wilczak was not disabled, the ALJ's decision became the Commissioner's final decision.

Section 405 of the Act authorizes judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g). The court reviews the Commissioner's legal determinations *de novo* and her factual findings deferentially, affirming those findings so long as they are supported by substantial evidence. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; it "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (internal quotation marks omitted). If the reviewing court finds that the Commissioner's decision is not supported by substantial evidence, "a remand for further proceedings is [usually] the appropriate remedy." *Briscoe*, 425 F.3d at 355. Moreover, the court "cannot uphold an administrative decision that fails to mention highly pertinent evidence," *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), or a decision containing errors of law, *see Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

In addition to satisfying these standards, the Commissioner's opinion must build an "accurate and logical bridge from the evidence to [the] conclusion so that [the] reviewing court[] may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (internal quotation marks omitted); *accord Briscoe*, 425 F.3d at 351 ("In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit

meaningful appellate review."); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (holding that the Commissioner must "articulate at some minimal level [her] analysis of the evidence to permit an informed review") (internal quotation marks omitted). To build a logical bridge, the Commissioner must "sufficiently articulate [her] assessment of the evidence to assure [the court] that [she] considered the important evidence and to enable [the court] to trace the path of [her] reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation marks omitted). The court "cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Wilczak argues that the ALJ's opinion errs in several respects, but it is necessary to consider only one—that the opinion did not consider the combined effect of her impairments, including her non-severe impairments, when assessing her RFC. Settled law holds that while a claimant's individual impairments may "not in themselves [be] enough to disable[,] … the combination of these conditions together" may be disabling. *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000); *see also Martinez v. Astrue*, 630 F.3d 693, 697-98, 698-99 (7th Cir. 2011); *Parker*, 597 F.3d at 923. Thus, "[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010); *see also Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); 20 C.F.R. § 416.945(e) (in assessing an individual's RFC, the ALJ must "consider the limiting effects of all [her] impairment(s), even those that are not severe").

Wilczak contends that the ALJ did not consider her carpal tunnel syndrome and limitations in concentration, persistence, and pace when assessing her RFC. The ALJ did consider the former. In assessing Wilczak's RFC, the ALJ acknowledged that Wilczak had been diagnosed with carpal tunnel syndrome. Doc. 18-3 at 29. The ALJ also mentioned Wilczak's treating neurologists' opinions that she was limited in the use of her hands, but rejected those opinions because they were inconsistent with Dr. Sheikh's findings that Wilczak had good grip strength and good fine-finger manipulative abilities. *Ibid.*; Doc. 18-8 at 82.

The ALJ did not, however, consider the above-referenced mental impairments. As noted above, the ALJ found at step three that Wilczak had a mild limitation in concentration, persistence, and pace, but that the limitation did not qualify as a severe impairment. Doc. 18-3 at 26. The ALJ then acknowledged that "a more detailed assessment" of Wilczak's mental impairments would be necessary at the RFC assessment. *Id.* at 26-27. But the ALJ never made that more detailed assessment; when determining Wilczak's RFC, the ALJ stated only that Dr. Larsen's and Dr. Hamersma's opinions that Wilczak had a mild limitation with respect to concentration, persistence, and pace were entitled to "significant weight." *Id.* at 28. The ALJ never explained whether or how that limitation affected his RFC assessment. And given that lack of explanation, the court cannot tell whether the ALJ actually factored the limitation into the RFC assessment. *See Young*, 362 F.3d at 1002 (requiring that an ALJ build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review") (internal quotation marks omitted).

Nor does the ALJ's opinion provide a basis for surmising how the ALJ would have incorporated Wilczak's concentration, persistence, and pace limitation into his RFC assessment. Wilczak's last regular employment was skilled work requiring a relatively high level of executive functioning. Doc. 18-6 at 27. Because the ALJ determined that Wilczak has some physical limitations, the mild concentration, persistence, and pace limitation might have been enough to tip the scales in Wilczak's favor in the RFC assessment, which means that the error is not harmless. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("[T]he fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.").

For these reasons, remand is warranted. *See Arnett*, 676 F.3d at 592 (remanding where the ALJ acknowledged the claimant's non-severe mental disorders at step two but failed to explain how he incorporated those disorders into the RFC assessment). On remand, the ALJ should engage in a cumulative assessment of Wilczak's impairments, one that a reviewing court can follow and assess. *See* 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Golembiewski has a host of significant medical conditions, including the partially amputated

leg, epilepsy, back pain, bowel and bladder dysfunction, and grasping problems that we have discussed. Having found that one or more of Golembiewski's impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe. On remand the agency must remember that a competent evaluation of Golembiewski's application depends on the total effect of all his medical problems.") (citations omitted). And because remand is warranted on this ground, it is unnecessary to consider Wilczak's other challenges to the ALJ's decision. *See Hudson v. Astrue*, 2009 WL 2612528, at *14 n.6 (N.D. Ill. Aug. 24, 2009) ("In light of this remand order [to reassess an RFC determination], we find it unnecessary to address the other arguments that plaintiff has raised. On remand, the ALJ will be free to re-examine and reassess those points, including … his credibility decisions in determining plaintiff's RFC.").

Before concluding, the court notes that Dr. Costalis's opinions regarding Wilczak's mental limitations should receive due consideration on remand. Because those opinions were rendered after the ALJ's decision, they must be considered only if they are "new and material" and "relate[] to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b); *see Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012); *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008); *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). The Social Security Appeals Council stated it had "considered … the additional evidence … [and] found that this information does not provide a basis for changing the Administrative Law Judge's decision." Doc. 18-3 at 3-4. The Seventh Circuit construes this language to mean that the Appeals Council found the evidence to be non-qualifying under the

regulation and therefore that it need not be considered. *See Farrell*, 692 F.3d at 771; *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

That decision was incorrect. Dr. Costalis's opinions were new, for they did not exist until after the ALJ's decision was issued. Nor could Dr. Costalis's opinions have been procured earlier. Wilczak began seeing Dr. Costalis in January 2010, and the ALJ decision was issued in February 2010; because Dr. Costalis saw Wilczak only once or twice each month, Dr. Costalis did not have enough time before the ALJ decision was issued to formulate an opinion regarding Wilczak's mental functioning. Dr. Costalis's opinions also were material; they bear directly on the issue for which this case is being remanded, and they find a greater level of mental impairment than is found elsewhere in the record. And the opinions relate to mental impairments that afflicted Wilczak at the time the ALJ decision was issued. Accordingly, Dr. Costalis's opinions should be considered on remand.

**Conclusion**

For the foregoing reasons, the court grants Wilczak's motion for summary judgment, denies the Commissioner's motion for summary judgment, and remands the case to the Commissioner for further review consistent with this opinion.

July 8, 2013

United States District Judge